UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL GLENN

     Petitioner,

v.                                    Case No. 8:08-cv-2079-T-23EAJ

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

     Michael Glenn petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 15) and challenges the validity of his state convictions for felony first-degree murder, attempted armed robbery with a firearm, and armed robbery with a firearm.  Glenn alleges one claim of trial court error and several claims of ineffective assistance of appellate counsel.  Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 20)

## FACTS[1]

     During the early morning hours of August 2, 2003, Antonio Thompson and his friend, Antonio Powell, drove to Jackson Court Apartments to purchase

---

[1]  This summary of facts derives from Glenn's brief on direct appeal.  (Respondent's Exhibit F)

marijuana.  Upon their arrival, several individuals, including Glenn, approached the vehicle.  Glenn went to the passenger's side, put a gun to Thompson's neck, and told Thompson to give him everything in his pockets.  Thompson complied.  Glenn walked around the vehicle to the driver's side and put the gun to Powell's neck.  Glenn ordered Powell to give him everything he had or he would shoot Powell.  Powell tried to drive away and Glenn opened fire.  One of the bullets pierced Powell's aorta and killed him.

After conflict with five different attorneys, Glenn ultimately represented himself at trial with the assistance of standby counsel.  A jury convicted Glenn of felony murder in the first-degree, attempted robbery with a firearm, and robbery with a firearm, for all of which Glenn serves three consecutive life sentences.

## I.    EXHAUSTION & PROCEDURAL DEFAULT

**Ground One**

Glenn contends that the state trial judge committed fundamental error and violated Glenn's Fifth, Sixth, Eighth, and Fourteenth Amendment rights by rebuking Glenn in the jury's presence.[2]  Glenn cannot obtain relief on this ground because he failed to exhaust his federal claim in the state courts.

---

[2] Glenn proceeded *pro se* at trial.  During cross-examination by the prosecutor, Glenn instructed the witness to "plead the Fifth."  The trial judge, in the jury's presence, advised Glenn not to coach the witness and warned that if he did so again, Glenn would be removed from the courtroom. (Respondent's Exhibit C, Vol. IV, pp. 523-24)

Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993).  Relying only upon state law, Glenn argued in his direct appeal that the state trial judge committed fundamental error by rebuking him in front of the jury.  (Respondent's Exhibit F)  Glenn failed to alert the state appellate court of a federal constitutional claim.  *See Anderson v. Harless*, 459 U.S. 4, 5-6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.").

Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1)(A), (C); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *Boerckel*, 526 U.S. at 842.  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of

the State to raise, by any available procedure, the question presented." *Pruitt v.
Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve
any constitutional issues by invoking one complete round of the State's established
appellate review process,' including review by the state's court of last resort, even if
review in that court is discretionary." *Pruitt*, 348 F.3d at 1358-59 (quoting *Boerckel*,
526 U.S. at 845).  To exhaust a claim, a petitioner must present the state court with
the particular legal basis for relief in addition to the facts supporting the claim.  *See
Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state
remedies requires that the state prisoner 'fairly presen[t] federal claims to the state
courts in order to give the State the opportunity to pass on and correct alleged
violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364,
365 (1995)).  The prohibition against raising an unexhausted claim in federal court
extends to both the broad legal theory of relief and the specific factual contention
that supports relief.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir.
2004).

Glenn in his reply contends that a single citation in his appellate brief to
*Faretta v. California*, 422 U.S. 806 (1975), alerted the state court of the federal

nature of his claim of fundamental error.[3]  The requirement that a federal habeas

corpus petitioner exhaust available state court remedies as a prerequisite to federal

review is satisfied if the petitioner "fairly presents" his claim in each appropriate

state court, alerting that court to the federal nature of the claim.  28 U.S.C.

§ 2254(b)(1); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A petitioner must "do

more than scatter some makeshift needles in the haystack of the state court

record."  *McNair v. Campbell,* 416 F.3d at 1302-03 (quotations and citations

omitted).  A petitioner may raise a federal claim in state court "by citing in

conjunction with the claim the federal source of law on which he relies or a case

deciding such claim on federal grounds, or by simply labeling the claim 'federal.'"

*Baldwin v. Reese,* 541 U.S. 27, 32 (2004).

Glenn did not present to the state appellate court a substantive federal

constitutional claim based upon the trial judge's rebuke, the claim he asserts in this

federal petition.  Contrary to Glenn's contention in his reply, his citation to *Faretta*

in his appellate brief is insufficient to alert the state court to a federal claim.

Glenn's failure to present the federal component of ground one to the state court

---

[3]  Glenn's appellate brief includes the statement:

> Appellant contends that as a *pro se* litigant involved in self-representation under *Faretta* he should be bound by the same procedural standards as an attorney and be entitled to the same procedural protections and safeguards.

(Respondent's Exhibit F, p. 15)  The appellate brief includes no other citation to a federal case or to the United States Constitution.

on direct appeal deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. at 845. A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy. *Snowden v. Singletary*, 135 F.3d at 735. Glenn's exclusively state law argument on direct appeal leaves the exhaustion requirement unsatisfied. *Duncan v. Henry*, 513 U.S. at 365. *See also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Consequently, ground one is procedurally defaulted.

Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial

- 6 -

created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Glenn*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Glenn fails to demonstrate either cause and prejudice excusing his default or a fundamental miscarriage of justice. *See Smith*, 256 F.3d at 1138. This failure renders ground one procedurally barred from federal review.

## II.   MERITS

The remaining claims are exhausted and entitled to a review on the merits.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the

> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts of
> the prisoner's case.

"The focus . . . is on whether the state court's application of clearly

established federal law is objectively unreasonable, . . . an unreasonable

application is different from an incorrect one." *Bell v. Cone*, 535 U.S. at 694. *See*

*Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective

reasonableness, not the correctness *per se*, of the state court decision that we are to

decide."). The phrase "clearly established Federal law" encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-

court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in

order to prevent federal habeas 'retrials' and to ensure that state-court convictions

are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693

(2002). Federal courts must afford due deference to a state court's decision.

"AEDPA prevents defendants – and federal courts – from using federal habeas

corpus review as a vehicle to second-guess the reasonable decisions of state

courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010).

Glenn bears the burden of overcoming a state court factual determination by

clear and convincing evidence. "[A] determination of a factual issue made by a

State court shall be presumed to be correct. The applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."

28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of

fact, but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d

831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

### Standard for Ineffective Assistance of Counsel claims

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective

assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled
> and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test
> for analyzing ineffective assistance of counsel claims.  According to
> *Strickland*, first, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent

prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305

("When applying *Strickland*, we are free to dispose of ineffectiveness claims on

either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690.  *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Glenn must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92.  To meet this burden, Glenn must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91.  Glenn cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the

> circumstances, as defense counsel acted at trial . . . .  We are not interested
> in grading lawyers' performances; we are interested in whether the
> adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v.*

*United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial

lawyers, in every case, could have done something more or something different.

So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is

prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*)

(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463

U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

**Grounds Two, Four, Five, Six and Seven**

Glenn asserts that his appellate counsel unreasonably failed to argue on

appeal that the state trial court improperly rejected several of Glenn's *pro se*

pre-trial motions.  In ground two Glenn contends that his appellate counsel

rendered ineffective assistance by not challenging on appeal the state trial court's

denial of a pre-trial motion to either dismiss the case or suppress a witness

identification.  In ground four Glenn contends that his appellate counsel rendered

ineffective assistance by not challenging on appeal the state trial court's denial of

his pre-trial motion to suppress witness Ebony Gollette's statements.  In ground

five Glenn contends that his appellate counsel rendered ineffective assistance by

not challenging on appeal the state trial court's denial of his petition for the writ of

habeas corpus.  In ground six Glenn contends that his appellate counsel rendered

ineffective assistance by not challenging on appeal the state trial court's denial of his "motion to corrective [sic] judicial process."  In ground seven Glenn contends that his appellate counsel rendered ineffective assistance by not challenging on appeal the state trial court's denial of a pre-trial motion in limine.  The state district court of appeal rejected each of these grounds in Glenn's state habeas petition.

The *Strickland* standard of review applies to ineffective assistance of appellate counsel claims.  *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  To establish a claim of ineffective assistance of appellate counsel, Glenn must show that appellate counsel performed deficiently and that the deficient performance resulted in prejudice.  To demonstrate deficient performance, Glenn must show that appellate counsel's failure to discover a non-frivolous issue and file a merits brief raising that issue fell outside the range of professionally acceptable performance.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  To demonstrate prejudice, Glenn must show that a reasonable probability exists that, but for appellate counsel's unreasonable failure to file a merits brief, he would have prevailed on appeal.  528 U.S. at 285-86.

The respondent argues that Glenn presented his various *pro se* motions and state habeas petition to the state courts "at a time when he was represented by counsel, [the motions and petition] were never adopted by counsel, and were, therefore, nullities."  (Doc. 20, p. 10)  Alternatively, the respondent contends that the state court never ruled on Glenn's *pro se* motions.  Consequently, appellate

counsel had no basis upon which to appeal as Glenn contends.  *See Simpson v. State*, 3 So. 3d 1135, 1146 (Fla. 2009) ("A party's failure to obtain a ruling on a motion fails to preserve the issue for appeal.").

Glenn in reply offers no evidence to refute the respondent's procedural arguments, arguing only that the "response on [his] motions not being ruled on and state case law cited for . . . *pro se* pleadings and petitions to be filed while represented by counsel doesn't even apply."  (Doc. 25, p. 6)  The record shows that Glenn was represented by counsel when he filed each of the *pro se* motions.  The record includes no evidence showing either that counsel adopted Glenn's motions or that the state trial court ruled on the motions.  Consequently, the motions were nullities.  *Logan v. State,* 846 So. 2d 472, 474 (Fla.2003) (holding that a defendant has no constitutional right to hybrid representation, i.e., representation by both counsel and himself); *Mourra v. State,* 884 So. 2d 316 (Fla. 2d DCA 2004) (holding that a pleading filed by a criminal defendant who is represented by counsel is generally treated as a nullity absent some unequivocal request to discharge counsel) (citing *Lewis v. State,* 766 So. 2d 288, 289 (Fla. 4th DCA 2000)).

Because Glenn's *pro se* motions were not properly before the state trial court and because no adverse ruling on the motions exists, appellate counsel had no basis upon which to appeal as Glenn now contends.  Glenn shows neither that appellate counsel unreasonably elected not to raise these issues on appeal nor that if appellate counsel had raised the issues that Glenn would have prevailed on

- 14 -

appeal. *Robbins*, 528 U.S. at 285-86. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Because he fails to establish deficient performance or resulting prejudice from appellate counsel's actions, Glenn cannot prevail on these claims of ineffective assistance. The state appellate court's rejection of grounds two, four, five, six, and seven was neither contrary to, nor an unreasonable application of, the *Strickland* standard.

**Ground Three**

Glenn contends that his appellate counsel rendered ineffective assistance by not raising on direct appeal a Fourth Amendment challenge to the allegedly illegal search of Glenn and his vehicle. Although Glenn sought to suppress evidence derived from a search of his person and his vehicle, the record contains no ruling on this motion and Glenn does not point to record evidence establishing a ruling.[4] Consequently, Glenn failed to preserve his Fourth Amendment issue for appeal. Appellate counsel is not ineffective for failing to raise an unpreserved ground on appeal. *See Medina v. Dugger*, 586 So.2d 317, 318 (Fla. 1991) (finding no ineffective assistance of appellate counsel for failure to raise an issue not preserved for appeal). The state court's rejection of this claim in Glenn's state habeas petition

---

[4] The record suggests that the motion to suppress may have been filed after Glenn was permitted to proceed *pro se*. However, no ruling on the motion is evident from the state court docket. (Respondent's Exhibit M, pp. 1-21)

was neither contrary to, nor involved an unreasonable application of, clearly

established federal law.  *See* 28 U.S.C. § 2254(d)(1).

**Grounds Eight, Ten, Eleven, Fourteen, Sixteen, Seventeen, and Eighteen**

Glenn argues that his appellate counsel unreasonably failed to challenge on

appeal the state trial court's application of state law and state procedure.  In

ground eight Glenn contends that his appellate counsel rendered ineffective

assistance by not arguing on appeal that the trial court erred by sentencing Glenn

to consecutive life sentences.  In ground ten Glenn contends that his appellate

counsel rendered ineffective assistance by not arguing on appeal that the trial court

erred by "allowing the [prosecution] to produce numerous . . . items into evidence

at trial after [Glenn]'s motion to compel discovery was granted."  In ground eleven

Glenn contends that his appellate counsel rendered ineffective assistance by not

challenging on appeal the trial court's failure to sustain Glenn's objections or

declare a mistrial after the prosecutor made "allusions to gang activity."  In ground

fourteen Glenn contends that his appellate counsel rendered ineffective assistance

by not arguing on appeal that "the trial court erred by not conducting a proper

inquiry into the jurors['] decision-making process once facts had become known to

the trial court . . . that the jury was in fear of retaliation."  In ground sixteen Glenn

contends that his appellate counsel rendered ineffective assistance by not

challenging on appeal both the trial court's failing to allow Glenn to present to the

jury a tape-recorded interview of prosecution witness Antonio Thompson and

admitting into evidence transcripts of portions of that interview.  In ground seventeen Glenn contends that his appellate counsel rendered ineffective assistance by not challenging on appeal the trial court's "allowing the State's alleged eyewitness to testify that she had been threatened by one of [Glenn]'s witnesses by a gesture to remain silent without showing a connection to [Glenn]."  In ground eighteen Glenn contends that his appellate counsel rendered ineffective assistance by not challenging on appeal the trial court's failure to declare a mistrial after a police officer during his trial testimony referred to Glenn's right to remain silent.

While Glenn's ineffective assistance claims are of federal constitutional dimension, his underlying claims of trial court error based on state procedure and state rules of evidence are matters of state law.  The state district court of appeal in rejecting these same grounds of ineffective assistance of appellate counsel in Glenn's state habeas petition has answered the question of what would have happened if appellate counsel had raised on appeal each ground Glenn now suggests.  *See, e.g., Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of

what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled . . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").  Accordingly, Glenn shows neither deficient performance nor resulting prejudice from appellate counsel's decision not to raise on appeal the claims presented in grounds eight, ten, eleven, fourteen, sixteen, seventeen, and eighteen.  Each ground warrants no relief because the elements of *Strickland* remain unsatisfied and Glenn fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting these grounds for relief.  *See* 28 U.S.C. § 2254(d)(1), (2).

**Ground Nine**

Glenn contends that his appellate counsel rendered ineffective assistance by not arguing on direct appeal that the trial court erred by both allowing Glenn to represent himself without advising him of the dangers of self-representation and failing to renew Glenn's waiver of counsel at each stage of the proceedings.  Glenn admits that the trial court "went over the disadvantages [of self-representation] but failed to go over the dangers."  Specifically, Glenn claims that the trial court (1) failed to advise Glenn that he would not be "provided with copying, postage, legal research facilities, electronic equipment for listening to audio tapes and other necessary tools for [him] to adequately represent himself," (2) failed to give Glenn

the respect due an attorney, (3) failed to provide Glenn "with relaxed adherence to court procedures," (4) exhibited a demeanor toward Glenn that "had a great prejudicial impact on the jury" and on the verdict, (5) improperly instructed Glenn's investigator not to subpoena witnesses, "putting fetters on [Glenn's] defense," (6) excluded evidence relevant to Glenn's defense, (7) ruled in the prosecution's favor on various objections, and (8) abused its discretion "by trying to discover [Glenn's] theory of defense."  Glenn argues that the trial court's failure to warn him of these "dangers" rendered his waiver of his right to counsel both unknowing and unintelligent.  The state district court of appeal rejected this ground in Glenn's state habeas petition.

The record shows that on April 11, 2006, the trial judge thoroughly questioned Glenn to ensure that he understood the ramifications of self-representation:[5]

| | |
|---|---|
| Defendant: | If you went through five different lawyers and all of them [are] doing the same thing, not doing nothing on your case. |
| Court: | Five lawyers. |
| Defendant: | You are better off representing yourself. |
| Court: | Including Mr. Gonzalez, Mr. Sinardi, Mr. Terrana, Mr. Traina. Four of the most qualified and experienced and seasoned trial |

_____

[5] The state court docket sheet shows that the trial court conducted an initial *Faretta* hearing in July 2005 and found Glenn competent to proceed *pro se*. (Respondent's Exhibit M, p. 9)  *See Faretta v. California*, 422 U.S. 806, 807 (1975).  The record contains no transcript of that hearing.  Glenn does not dispute the validity of the July 2005 colloquy.  The trial judge conducted another *Faretta* inquiry on April 11, 2006, six days before trial began.  (Respondent's Exhibit M, transcript of April 11, 2006, pre-trial hearing, pp. 31-46)

|  |  |
|---|---|
|  | lawyers in the criminal justice system in Hillsborough County. You have had all four. And you fired or dissolved your relationship with every one of them because they were plotting against you. |
| Defendant: | Because I knew what was going on, that they were working with the State. |
| Court: | So they were working with the State against you? |
| Defendant: | Yes, sir. |
| Court: | Okay. I can only do this, sir, which is what I am going to do for the last time. Let me explain to you some of the ways having a lawyer to represent you can be to your advantage. A lawyer's legal knowledge and experience may favorably affect bail or pre-trial release possibilities. It may result in obtaining information about the case through skillful use of discovery devices, may uncover potential violation[s] of constitutional rights and take effective measure to address them. A lawyer may ensure compliance in speedy trial and statute of limitations provisions and identify [and] secure favorable evidence to be introduced at trial later on in your behalf. Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | At trial a lawyer has the experience and knowledge of the entire process. He or she will argue for your side during the whole trial and present the best legal argument for your defense. Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | Since jury qualification and selection are governed by numerous legal procedures, a lawyer's knowledge in legal procedures and a lawyer's experience may enhance the selection process of a jury on your behalf. Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | A lawyer can call witnesses for you, question witnesses against you, and present evidence on your behalf. A lot of which you are talking about today. A lawyer can do that for you. Do you understand that? |

Defendant:     Yes, sir.

Court:         A lawyer can advise you on whether or not you should testify, the consequences of that decision and what you have a right to say and not to say.  Do you understand that?

Defendant:     Yes.

Court:         A lawyer has studied the rules of evidence and knows what evidence can and cannot come into your trial.  Do you understand that?

Defendant:     Yes.

Court:         A lawyer may provide assistance in ensuring that the jury is given complete and accurate jury instructions by the court and may make effective closing arguments on your behalf and may prevent improper argument by the prosecutor.  Do you understand that?

Defendant:     Yes, sir.

Court:         A lawyer may ensure that errors committed during the trial are properly preserved for appellate review later by a higher court.  Do you understand that?

Defendant:     Yes, sir.

Court:         If you are convicted a lawyer's assistance may be useful in preparing for sentencing ensuring that favorable facts are brought to the attention of the court and ensuring that the court is advised of all legally available favorable dispositions and ensuring that the sentence is lawfully imposed.  Do you understand that?

Defendant:     Yes, sir.

Court:         A lawyer's legal knowledge and experience may be helpful in filing an appeal and seeking release on bail pending the appeal.  Do you understand that?

Defendant:     Yes, sir.

Court:         As it is almost always unwise to represent yourself in court, let me advise you of a few of the disadvantages of representing yourself in court.  Do you understand that you will not and you will not in this

|  |  |
|---|---|
|  | court get any special treatment from this court just because you are representing yourself[?] Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | You understand you will not be entitled to a continuance simply because you wish to represent yourself?  Apparently that's been done numerous times but that's over.  Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | You will be limited to legal resources because you are in custody that are available to you while you are in custody.  You will not be entitled to any additional library privileges just because you are representing yourself.  Do you understand that? |
| Defendant: | Yes. |
| Court: | A lawyer has fewer restrictions in researching your defense.  Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | You are not required to possess the legal knowledge or skills of an attorney in order to represent yourself.  However, you will be required to abide by the rules of criminal law and the rules of courtroom procedure.  Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | These laws I have just referred to took lawyers years to learn and abide by [a]s I indicated to you with regard to the four previous attorneys that you have either fired or withdr[ew] from your case.  Do you remember that? |
| Defendant: | Yes, sir. |
| Court: | If you demonstrate an unwillingness to abide by these rules I will terminate your self-representation.  Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | Do you understand if you are disruptive I can terminate your self-representation and remove you from the courtroom in which |

|  |  |
|---|---|
|  | the trial will continue without you being present.  Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | Do you understand your access to the state attorney who is prosecuting you will be severely reduced as compared to a lawyer who can easily contact the state attorney and talked [sic] to them about your case?  A lawyer can more easily contact the state attorney and talk to them about your case than you can. |
| Defendant: | I will still be able to get in contact with the state attorney, right? |
| Court: | No.  You don't have the ability to get in contact with the state attorney like a lawyer would. |
| Defendant: | You said it would be reduced. |
| Court: | That's right.  It is reduced.  You are having contact with them right now.  But you won't have the contact like [counsel] would.  That's my point.  Do you understand that? |
| Defendant: | But I can still have contact with them? |
| Court: | If they want to have contact with you.  They don't have to.  They don't have to talk to you at all if they don't want to. |
| [Counsel]: | I think in terms of if he retains a lawyer he still wants to talk to the state attorney. |
| Court: | No.  They can.  They really can't but they can and probably would more than likely would talk to somebody like [standby counsel] who is a very experienced lawyer just like these other gentlemen.  He is just as experienced and competent as they are.  He would have more access and more ability to discuss your case with the state attorney than you would.  Do you understand that? |
| Defendant: | Yes. |
| Court: | Let me make sure you understand this.  The State is not going to go easier on you or give you any special treatment because you are representing yourself.  Do you understand that? |
| Defendant: | Yes. |

Court:        The State will present its case . . . as experienced lawyers just as
              though you are an experienced lawyer.  Do you understand that?

Defendant:    Yes.

Court:        If you are convicted, sir, you cannot claim on appeal that your own
              lack of legal knowledge or skill constitutes a basis for a new trial.
              Do you understand that?

Defendant:    Yes, sir.

Court:        In other words, you can't claim that you received ineffective
              assistance of counsel if you were your own counsel.  Do you
              understand that?

Defendant:    Yes.

Court:        Do you understand these dangers and disadvantages of representing
              yourself?

Defendant:    Yes, sir.

Court:        Do you have any questions about these dangers and disadvantages?

Defendant:    If I understood it, right?  You say I am limited.

Court:        You are a prisoner in the county jail.  Obviously you are limited.

Defendant:    If I understand it correct[ly], it doesn't stop me, it just says I am
              limited.

Court:        You are at a disadvantage.  That's what Judge Tharpe has been
              trying to convince you for months.  You are at a disadvantage.
              Everybody including me is encouraging you to use the services of a
              lawyer which would be provided to you but which you have
              refused.  You say they are collaborating with the State Attorney's
              Office.

Defendant:    Yes, sir.

Court:        Have you received and read a copy of the charge against you, sir?

Defendant:    Yes, sir.

| | |
|---|---|
| Court: | Do you understand what you are charged with? |
| Defendant: | Yes, sir. |
| Court: | During the time that you were represented by lawyers did you discuss the case with your lawyers? |
| Defendant: | No, sir.  I never really got a chance to. |
| Court: | You never discussed your case with any of your lawyers? |
| Defendant: | To a certain extent.  I talked about motions and things like that. |
| Court: | Maybe they didn't stay on your case long enough to get involved. |
| Defendant: | Each one of them stayed on my case six, seven, eight months.  That's long enough. |
| Court: | I agree.  And I can't believe they didn't discuss this case fully in their minds and be prepared. |
| Defendant: | Half of them never came to visit me. |
| Court: | Okay.  Maybe you['ve] got an appellate issue there.  Do you understand - - is he a habitual offender? |
| Prosecutor: | No. |
| Court: | Is it alleged he used a firearm? |
| Defendant: | Yes, sir. |
| Court: | Is it alleged he wore a mask or disguise? |
| Prosecutor: | No. |
| Court: | What is he looking at as a maximum sentence? |
| Prosecutor: | Life. |
| Court: | Do you understand that if found guilty by the jury the maximum jail you could receive is life in the Florida State Prison? |

| | |
|---|---|
| Defendant: | Yes, sir. |
| [Counsel]: | There is no possibility of parole. |
| Court: | Without possibility of parole. |
| Defendant: | Yes, sir. |
| Court: | The minimum jail prison [sic] would be not guilty.  You are looking at anything from not guilty to life without possibility of parole.  Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | Do you have any questions about the charges against you?  Do you understand what you are charged with? |
| Defendant: | Yes, sir. |
| Court: | You understand the penalties that I have outlined for you, correct?  Anywhere from not guilty to life[?] |
| Defendant: | Yes, sir. |
| Court: | How old are you? |
| Defendant: | Twenty-four. |
| Court: | Can you read? |
| Defendant: | Yes, sir. |
| Court: | Can you write? |
| Defendant: | Yes, sir. |
| Court: | Can you understand English? |
| Defendant: | Yes, sir. |
| Court: | How many years of school have you done? |
| Defendant: | Nine years or ten years. |

- 26 -

| | |
|---|---|
| Court: | What grade did you complete? |
| Defendant: | Tenth. |
| Court: | Did you quit during the tenth grade? |
| Defendant: | I did all of ninth and stopped. |
| Court: | So you got a ninth grade education. |
| Defendant: | I have my GED. |
| Court: | Good for you.  That's great.  Are you currently under the influence of any drugs or alcohol? |
| Defendant: | No, sir. |
| Court: | You are not having any trouble discussing this with me today? |
| Defendant: | No. |
| Court: | Have you ever been diagnosed or treated for mental illness? |
| Defendant: | No. |
| Court: | Do you have any physical problems? |
| Defendant: | No, sir. |
| Court: | Has anyone at the jail or anywhere else advised you don't use a lawyer, don't get a lawyer, it is better for you in the end?  Has anyone given you that advice? |
| Defendant: | From past experience. |
| Court: | Not yourself[.]  Has anybody else told you not to use a lawyer? |
| Defendant: | No, sir. |
| Court: | Has anyone threatened you if you accept a lawyer? |
| Defendant: | No, sir. |

Court:         Do you understand a lawyer appointed by this court will represent
               you for free?  It won't cost you one dime.

Defendant:     Yes, sir.

Court:         Have you ever represented yourself before in a trial?

Defendant:     No, sir.

Court:         Do you have any more questions about having a lawyer appointed
               to defend you?  You know I will appoint you a free lawyer if you
               want one.

Defendant:     Can I be appointed co-counsel?

Court:         You have appointed standby counsel.  No co-counsel.  You either
               get a lawyer or a standby lawyer.  No co-counsel.

Defendant:     I cannot be appointed co-counsel?

Court:         No.  Standby counsel or represent yourself.  Or you take a free
               lawyer which has been offered to you probably a hundred times.
               This is the last time you are going to get a shot at it.

Defendant:     I will take co-counsel.

Court:         You don't get co-counsel.

Defendant:     I guess I will be forced to represent myself.

Court:         No, you are not forced.  You can have a lawyer or you can
               represent yourself.  You are not forced to do anything except pick
               between those two choices.

Defendant:     Your Honor, I want co-counsel.

Court:         You are not getting it.  That's not an option.  You can represent
               yourself, you can have a lawyer.  Pick one.

Defendant:     I pick co-counsel and you told me I can't get co-counsel.

Court:         That's not your choice.  What do you want to do?

Defendant:     I am forced to proceed pro se.

| | |
|---|---|
| Court: | No, you're not.  But you are electing to.  Are you sure you don't want me to appoint a lawyer to represent you? |
| Defendant: | Yes, sir. |
| Court: | Okay.  You know you have standby counsel, Mr. Fraser.  He is standing right next to you.  He will be available to you if you have any questions during the course of the proceedings.  Do you understand that's his role? |
| Defendant: | Yes. |
| Court: | I am appointing Mr. Fraser.  I will affirm his appointment as standby counsel to assist you.  However, as your lawyer, you will still be responsible for the organization and content of presenting your case.  You still have the entire responsibility for your own defense.  Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | Based on what I have heard I find that you have made a knowing and intelligent decision to represent yourself.  I don't feel that it is a wise decision but it is your decision to make.  You got a GED education.  Obviously you have had a lot of experience in the legal system since you have been incarcerated.  I am going to allow you to continue to represent yourself. |

(Respondent's Exhibit M, transcript of April 11, 2006, pre-trial hearing, pp. 31-46)

"A defendant in a state criminal trial has a constitutional right to proceed

without counsel when he voluntarily and intelligently elects to do so." *Faretta v.*

*California*, 422 U.S. 806, 807 (1975).  To satisfy the Sixth Amendment, a defendant

must intentionally waive his right to counsel.  *Fitzpatrick v. Wainwright*, 800 F.2d

1057, 1063 (11th Cir. 1986).  *Faretta* requires informing a defendant of the dangers

and disadvantages of self-representation, so that "the record will establish that he

knows what he is doing and his choice is made with eyes wide open." *Faretta v.*

*California*, 422 U.S. at 835.  "[W]hile a waiver hearing expressly addressing the disadvantages of a *pro se* defense is much to be preferred, it is not absolutely necessary.  The ultimate test is not the trial court's express advice, but rather the defendant's understanding."  *Fitzpatrick v. Wainwright*, 800 F.2d at 1065.  The *Faretta* standard is satisfied if the record demonstrates that the defendant knowingly and voluntarily elected to represent himself.  *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir. 2002).

The record shows that the trial judge conducted a full *Faretta* hearing and specifically questioned Glenn about his understanding of the nature and complexity of the charges against him, the possible sentence he faced upon conviction, his age, his educational level, his experience in the legal system, whether he suffered from any physical or mental disability, recent drug or alcohol use, and whether he had been threatened or coerced into electing to represent himself.  The colloquy shows Glenn clearly understood the ramifications of proceeding *pro se* and demonstrates that Glenn knowingly and voluntarily elected to represent himself.  *See Strozier v. Newsome*, 926 F.2d 1100, 1105 (11th Cir. 1991) (delineating factors for determining a knowing and intelligent waiver of right to counsel).  The Constitution does not require a trial judge to advise a defendant of the alleged dangers about which Glenn complains.

Glenn shows neither that appellate counsel unreasonably elected not to raise this issue on appeal nor that if appellate counsel had raised the issue that Glenn

would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. at 285-86. *See also Jones v. Barnes*, 463 U.S. at 751-52 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Because Glenn fails to establish deficient performance or resulting prejudice from appellate counsel's actions, he cannot prevail on this claim of ineffective assistance. The state appellate court's denial of relief on this ground was neither contrary to, nor an unreasonable application of, the *Strickland* standard.

**Ground Twelve**

Glenn contends that his appellate counsel rendered ineffective assistance by not arguing on direct appeal that the prosecutor committed misconduct in violation of *Giglio v. United States*, 405 U.S. 150 (1972), when the prosecutor knowingly elicited at trial perjured testimony from Antonio Thompson. Glenn cites inconsistent statements in Thompson's statements to the police, his deposition, and his trial testimony to support this ground. Glenn argues that Thompson vacillated about (1) whether Glenn was the person who shot the victim, (2) whether he saw the shots come from Glenn's gun or a different gun, and (3) the number of photopacks that Thompson viewed before identifying Glenn as the shooter. The state district court of appeal rejected this ground in Glenn's state habeas petition.

"To make out a valid *Giglio* claim, a petitioner 'must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material – i.e., that there is a reasonable likelihood that the false testimony could have affected the judgment.'" *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)).

Glenn fails to establish that the prosecutor committed a *Giglio* violation because he fails to establish that Thompson's trial testimony was false. Glenn presents no evidence showing that any of Thompson's statements were false. If Thompson's testimony differed from his prior statements, cross-examination was the appropriate avenue to undermine his credibility.

Glenn's failure to establish that the prosecutor knowingly used perjured or false testimony precludes finding a *Giglio* violation. *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d at 1208. Consequently, because Glenn cannot establish such violation, he cannot establish that appellate counsel performed deficiently by failing to raise this issue on direct appeal. Glenn fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this ground.

**Ground Thirteen**

Glenn contends that his appellate counsel rendered ineffective assistance by not arguing on direct appeal that the prosecutor committed misconduct by (1) "engaging in inappropriate personal attacks on [Glenn] by expressing . . . personal beliefs about [Glenn]'s guilt, characterizing [Glenn] as a drug dealer, a firearm carrier, gang member, and engaging in needless sarcasm," (2) mischaracterizing the testimony of defense witness Calvin Fisher, (3) insinuating that Glenn fabricated his alibi, (4) misstating defense witness testimony, (5) vouching for the credibility of witnesses, (6) engaging in "vituperative or perjorative characterizations" of Glenn and other witnesses, (7) improperly informing the jury during opening statement that the prosecution would produce "certain testimony" but failed to do so, (8) misstating expert witness's testimony about how the victim was shot, and (9) improperly shifting the burden of proof by saying in opening statement, "At the end of the case when you apply the law to those facts you will have no other option but to find Michael Glenn guilty of murder and robbery."

To prove prosecutorial misconduct Glenn must show that the challenged conduct was both improper and prejudiced his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). An improper prosecutorial remark compels habeas corpus relief only if the remark is so egregious that the proceeding is rendered fundamentally unfair. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S.

168, 181 (1986).  *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he

touchstone of due process analysis in cases of alleged prosecutorial misconduct is

the fairness of the trial, not the culpability of the prosecutor.").  *Darden*, 477 U.S. at

181, teaches:

> The relevant question is whether the prosecutors' comments "so infected
> the trial with unfairness as to make the resulting conviction a denial of due
> process." *Donnelly v. DeChristoforo*, 416 U.S. 637, [643] . . . (1974).
> Moreover, the appropriate standard of review in a petition for the writ of
> habeas corpus is "the narrow one of due process, and not the broad
> exercise of supervisory power." *Id.*, at 642 . . . .

*Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (*en banc*) ("If a

reviewing court is confident that, absent the improper remarks, the jury's decision

would have been no different, the proceeding cannot be said to have been

fundamentally unfair."), *cert. denied*, 480 U.S. 911 (1987); *United States v. Young*,

470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on

the basis of a prosecutor's comments standing alone, for the statements or conduct

must be viewed in context; only by doing so can it be determined whether the

prosecutor's conduct affected the fairness of the trial.").

   With one exception, Glenn in his petition cites no particular statement by

the prosecutor or any portion of the record to support his ground for relief.

Although in reply he cites numerous pages of the trial transcript, Glenn again fails

to identify a specific statement to support his argument.[6]  The pages that Glenn

cites bear no evidence of prosecutorial misconduct as he suggests.

Glenn's challenge to the single specific statement in the prosecutor's

opening statement that allegedly shifted the burden of proof likewise warrants no

relief.  The trial judge in his preliminary instructions advised the jury that what the

attorneys said in their opening statements was not evidence and that the jurors

were not to consider the attorneys' statements as evidence.  (Respondent's

Exhibit C, Vol. II, pp. 171-72)  A jury is presumed to follow a court's instructions.

*Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001); *Weeks v. Angelone*, 528 U.S.

225, 234 (2000).  The prosecutor's opening statement was a brief recitation of what

he anticipated the evidence would show.  Viewing the comment in the context of

the prosecutor's entire opening statement and the trial as a whole, the statement

neither rendered the trial fundamentally unfair nor infected the trial with such

unfairness that the resulting convictions amount to a denial of due process.  *See*

*Donnelly v. DeChristoforo*, 416 U.S. at 642.  Consequently, Glenn fails to establish a

basis upon which appellate counsel could have appealed.  Glenn fails to meet his

burden of proving that the state court unreasonably applied controlling Supreme

Court precedent or unreasonably determined the facts in rejecting this ground.  *See*

28 U.S.C. § 2254(d).

---

[6]  Glenn cites the following pages of the record:  176-77, 322-24, 343-44, 349-50, 352, 386, 396-97, 399, 401-02, 407, 425-29, 433, 436-37, 439, 495, 514-17, 521-22, 525-26, 534-35, 548, 665, 669, 728-29, 732-35, 738, 741, 744-46, 821-26, and 841-43.  (Doc. 25, pp. 13-14)

**Ground Fifteen**

Glenn contends that his appellate counsel rendered ineffective assistance by not arguing on direct appeal that the trial judge showed racial bias during voir dire by rejecting Glenn's challenge for cause to venireman Matthew Rodriguez.  Glenn also argues that the trial judge improperly granted the prosecutor's peremptory challenge to venireman Nettie Durant, despite the prosecutor's failure to offer a race-neutral reason for the challenge.

<u>Matthew Rodriguez</u>

Glenn contests the trial court's rejection of his challenge for cause to venireman Matthew Rodriguez.  Rodriguez stated during voir dire that he had grown up in the area near the crime scene and that he had been the victim of an armed robbery by three African-American "kids" with a gun.  Glenn contends that "an excusal for cause should have been granted" and that the trial judge "abused his discretion by refusing to excuse [Rodriguez] once [the judge knew that Rodriguez] was a victim of the same type of crime and grew up near the area [where] the crime occurred and stated [a] reasonable probability of prejudice by stating that it is not a nice area to live in."  Glenn argues that once the trial judge knew that some veniremen had been the victims of crimes by African-Americans, the judge had a duty to question the venire about racial prejudice against African-Americans.  Glenn further argues that Rodriguez's statement that he did not see "color" (referring to the ethnicity of the men who robbed him) indicated a

racial bias that should have prompted the trial judge to excuse Rodriguez from the

venire.

     During voir dire by the prosecutor Rodriguez stated:

| [Prosecutor]: | I understand. . . . Anyone else . . . has anyone [been] involved in any kind of gun violence[?] . . . Mr. Rodriguez, tell me about that, sir. |
|---|---|
| [Rodriguez]: | Three kids came into my garage [at] gun point [and] ripped the chain off my neck and my wife and kids were inside. |

. . . .

| [Prosecutor]: | How long ago did it happen? |
|---|---|
| [Rodriguez]: | Ten years ago. |
| [Prosecutor]: | Were the police able to divulge a suspect? |
| [Rodriguez]: | Yes. |
| [Prosecutor]: | Was the person eventually charged? |
| [Rodriguez]: | Yes. |
| [Prosecutor]: | D[id] you have to come to court to testify? |
| [Rodriguez]: | No. |
| [Prosecutor]: | Obviously that's a horrible thing to experience especially with a firearm.  Will you be able to be fair in this case and leave that personal experience outside the door? |
| [Rodriguez]: | Absolutely. |

. . . .

| [Prosecutor]: | Thank you.  You may also hear testimony about a part of town that's referred to [as] Jackson Heights over in east Tampa, the area of 34th Street and Lindell.  There is an apartment complex called Jackson Court.  Is anyone familiar with that particular area? . . . . |
|---|---|

. . . .

| | |
|---|---|
| [Rodriguez]: | That's not too far from where I grew up. |
| [Prosecutor]: | Is that going to affect [sic] you to be fair? |
| [Rodriguez]: | That's not a great area. |
| [Prosecutor]: | Does that mean that they are a criminal or they deserve to be a victim? |
| [Rodriguez]: | That's fair. |

. . . .

| | |
|---|---|
| [Prosecutor]: | Is there anything that you heard here this afternoon that would affect your ability to be fair in this case? |

. . . .

| | |
|---|---|
| [Prosecutor]: | Thank you, sir.  Mr. Rodriguez, what do you think? |
| [Rodriguez]: | I understand. |

(Respondent's Exhibit C, Vol. I, pp. 24-25, 44-45, 66).

Glenn inquired of Rodriguez during voir dire:

| | |
|---|---|
| Defendant: | Anybody ever been a victim of a crime by a black person? |

. . . .

| | |
|---|---|
| [Rodriguez[: | I was robbed by three black kids at my garage at gunpoint. The only reason I used that word is because you used it.  I didn't see color at that time. |
| Defendant: | I understand, sir.  Did you ever find out who they were? |
| [Rodriguez]: | Yes.  The one that I caught. |
| Defendant: | Was any violence displayed? |

| [Rodriguez]: | When I caught him there was a little bit. |

(Laughter).

| Defendant: | What did you feel after you caught the guy and you admitted a little bit of violence? |
| [Rodriguez]: | I just held them for the cops.  That's all I did. |
| Defendant: | What did you feel about him and his friends? |
| [Rodriguez]: | I got six kids - they were inside with my wife.  There would have been a lot more violence if they would have gone inside. |
| Defendant: | Would that have a different affect or different action or any grudges against [a] certain type of black people? |
| [Rodriguez]: | No. |

(Respondent's Exhibit C, Vol. I, pp. 99-102)

During jury selection Glenn sought to excuse Rodriguez:

| Court: | . . . . Matthew Rodriguez[.  W]hat says the State? |
| [Prosecutor]: | Accept. |
| Court: | Defense[?] |
| Defendant: | Cause. |
| Court: | What's your basis for cause? |
| Defendant: | He said he wouldn't be able to effectively make a judgment on me representing myself *pro se*. |
| [Prosecutor]: | The State doesn't recall that at all. |
| Court: | Neither do I. |
| Defendant: | He did, sir. |

| | |
|---|---|
| [Prosecutor]: | Judge, I did at the end of the State's voir dire ask every juror individually whether they can be fair and whether the defendant representing himself would affect their ability to be fair and Mr. Rodriguez said it would not affect his ability. He said absolutely not. |
| Defendant: | Mr. Rodriguez also grew up around the Jackson Heights area.  He also [has] been a victim of a crime with guns. |
| Court: | That's not a basis for challenge for cause.  Do you want to excuse him peremptorily? |
| Defendant: | That's all right, sir. |
| Court: | Defense accepts Mr. Rodriguez. |

(Respondent's Exhibit C, Vol. I, p. 147)  Rodriguez was selected as a juror without

further argument or objection from Glenn.

"The constitutional standard of fairness requires that the criminally accused

have a panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 794, 799

(1975).  "The purpose of voir dire is to ascertain whether potential jurors can

render a verdict solely on the basis of evidence presented and the charge of the trial

court." *Wilcox v. Ford*, 813 F.2d 1140, 1150 (11th Cir. 1987).  *See also J.E.B. v. Ala.

ex rel. T.B.*, 511 U.S. 127, 143-44 (1994) ("Voir dire provides a means of

discovering actual or implied bias and a firmer basis upon which the parties may

exercise their peremptory challenges intelligently."); *Mu'Min v. Virginia*, 500 U.S.

415, 431 (1991) ("Voir dire examination serves the dual purposes of enabling the

court to select an impartial jury and assisting counsel in exercising peremptory

challenges.").  "Voir dire plays a critical function in assuring the criminal

defendant that his Sixth Amendment right to an impartial jury will be honored."
*Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).

The trial judge afforded Glenn the opportunity to question Rodriguez about any potential bias against African-Americans. Glenn did not request that the judge inquire of the venire about such bias. *See Turner v. Murray*, 476 U.S. 28, 37 (1986) ("[A] defendant cannot complain of a judge's failure to question the venire on racial prejudice unless the defendant has specifically requested such an inquiry."). Rodriguez's voir dire testimony evinces neither racial bias nor a pre-conceived notion about Glenn or the facts of the case. No evidence establishes that Rodriguez could not fairly evaluate the evidence and follow the law. *See Heath v. Jones*, 941 F.2d 1126, 1132, (11th Cir. 1991) ("A prospective juror must be removed for cause if his . . . views 'would prevent or substantially impair the performance of his . . . duties as a juror.'") (citations omitted). *See also United States v. Khoury*, 901 F.2d 948, 955 (11th Cir. 1990) ("The jurors in this case took their oath, and absent evidence to the contrary, we must presume that they were fair and impartial, as indeed they swore to be."). Glenn fails to establish that a proper basis to challenge Rodriguez for cause existed or that the trial judge improperly rejected Glenn's challenge. He likewise presents no legal authority showing that the trial judge was constitutionally required to question the venire about racial bias. Consequently, appellate counsel cannot be deemed ineffective for failing to pursue this meritless claim on appeal.

Case 8:08-cv-02079-SDM-AEP   Document 32   Filed 02/03/12   Page 42 of 44 PageID 348

Nettie Durant

Glenn contends that the trial judge exhibited racial bias by accepting the prosecutor's reason for excusing venireman Nettie Durant "without evidence to support the rebuttal of the [prosecutor]'s false allegations or [Durant's] inability to be fair."

Durant, an African American, stated during voir dire that she had a cousin who abused drugs.  (Respondent's Exhibit C, Vol. I, p. 103)  The prosecutor sought use a peremptory challenge to exclude Durant from the jury:

| | |
|---|---|
| Defendant: | . . . . Nettie Durant, what says the State? |
| [Prosecutor]: | Strike. |
| Court: | State excuses Ms. Durant.  Lucien - - |
| Defendant: | Race neutral reason. |
| [Prosecutor]: | She has a cousin on powder cocaine and she has cousins that live in the Jackson Heights area. |
| Court: | I will accept that - - |
| Defendant: | That's not a race neutral reason.  I object. |
| Court: | You have to show there is some basis for finding that there is a race neutral reason not to challenge.  What is your showing for that?  Is Ms. Durant black? |
| Defendant: | Yes, sir. |
| Court: | What evidence is there that you think they are excusing her because she is black? |
| Defendant: | Because she will have a fair judgment on judging the situation. |

Court:                That doesn't make sense.  That doesn't satisfy the burden.  I will allow the State's challenge to stand.

(Respondent's Exhibit C, Vol. I, p. 144)  Glenn made no further objection about Durant's excusal.

In Florida, a party objecting to another party's use of a peremptory challenge on the basis of race must (a) make a timely objection on that basis, (b) show that the prospective juror is a member of a distinct racial group, and (c) request that the court ask the other party its reason for the challenge.  *Murray v. Haley*, 833 So.2d 877, 879 (Fla. 1st DCA 2003) (citing *Melbourne v. State*, 679 So.2d 759, 764 (Fla. 1996)).  If these initial requirements are met, the proponent of the challenge must come forward with a race-neutral reason for the challenge.  *Murray v. Haley*, 833 So.2d at 879 (citing *Melbourne v. State*, 679 So.2d at 764; *Jones v. State*, 787 So.2d 154, 156 (Fla. 4th DCA 2001)).  A peremptory challenge is permitted if the proponent's reason is facially race-neutral and the court believes that, given all of the circumstances surrounding the challenge, the reason is not a pretext.  *Murray v. Haley*, 833 So.2d at 879.  However, "even if the procedure is followed precisely, the issue is not preserved for appellate review if the party objecting to the challenge fails to renew the objection before the jury is sworn."  *Zack v. State*, 911 So.2d 1190, 1204 (Fla. 2005) (citing *Franqui v. State*, 699 So.2d 1332, 1334 (Fla. 1997); *Joiner v. State*, 618 So.2d 174 (Fla. 1993)).

Respondent correctly argues that Glenn abandoned this issue for appeal by failing to renew his objection before the jury was sworn.  *See Joiner v. State*, 618 So.2d at 176 ("[C]ounsel's action in accepting the jury led to a reasonable assumption that he had abandoned, for whatever reason, his earlier objection.  It is reasonable to conclude that events occurring subsequent to his objection caused him to be satisfied with the jury about to be sworn.").  Appellate counsel had no obligation to raise an issue that was not properly preserved for appellate review.  The state appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard.  *See* 28 U.S.C. § 2254(d)(1), (2).

Accordingly, Glenn's petition for the writ of habeas corpus (Doc. 15) is **DENIED**.  The clerk shall enter a judgment against Glenn and close this action.

ORDERED in Tampa, Florida, on February 3, 2012.

*Steven D. Merryday*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE